UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DWIGHT CLAYTON BELTON,

  Plaintiff,

  v.

ALAMEDA COUNTY SHERIFF'S DEPARTMENT, et al.,

  Defendants.

Case No. 24-cv-00380-JD

**ORDER RE SUMMARY JUDGMENT**

Re: Dkt. Nos. 116, 121, 122, 148

  Dwight Belton, a state prisoner, filed a pro se civil rights complaint under 42 U.S.C. § 1983, alleging denial of medical care and interference with his legal mail while a pretrial detainee at Santa Rita Jail in Alameda County. The Court ordered service on the Alameda County Sheriff's Office, Alameda County Sheriff Sanchez, Deputy Lopez, and Deputy Ujdur ("County Defendants") who filed a motion for summary judgment. Plaintiff filed an opposition, and the County Defendants filed a reply.

  The Court also ordered service on Dr. Magat and WellPath Healthcare Providers, who contracted to provide medical care at the jail. These defendants ("Medical Defendants") filed a separate motion for summary judgment. Plaintiff filed an opposition, and the Medical Defendants filed a reply.

  Plaintiff filed his own motion for a summary judgment [1] to which the County Defendants and the Medical Defendants filed oppositions and plaintiff filed a reply.

  The County Defendants' motion for summary judgment is granted, the Medical Defendants' motion for summary judgment is granted, and plaintiff's motion for summary

---

[1] Plaintiff submitted nearly a dozen other filings containing arguments in support of his claims for summary judgment. The Court has reviewed these submissions and considered his arguments.

judgement is denied.

**COMPLAINT**

Plaintiff alleged that he suffered from severe lower back pain and bilateral sciatic nerve damage. Prior to being detained, plaintiff was taking multiple medications, including Gabapentin for back pain and nerve damage. When plaintiff was originally placed into custody, he did not receive his medication and was not seen by a medical provider for thirteen days, and he informed the judge in his criminal case. That judge ordered plaintiff to be seen by a health care provider. Plaintiff was seen the next day, but the medical provider did not provide Gabapentin, instead prescribing a different medication. Plaintiff was later prescribed Cymbalta for the nerve damage and pain. However, Cymbalta did not work, and plaintiff continued to be in pain, but medical staff did not provide Gabapentin. In addition, plaintiff sought X-rays, an MRI, or other imaging to determine the extent of his injuries and appropriate medical appliances to move around. Plaintiff stated that Alameda County Sheriff Sanchez along with WellPath Health Care and Dr. Magat violated his rights by denying adequate medical care.[2]

Plaintiff also stated that he submitted this civil rights complaint to Deputy Lopez to be sent to the Court. It was returned to plaintiff more than one month later by Deputy Ujdur, with a note stating that more postage was required. Plaintiff says this delayed the commencement of this case.

**BACKGROUND**

**Medical Care**

The salient facts are largely undisputed. Plaintiff arrived at Santa Rita Jail on July 26, 2023. Dkt. No. 7 at 1. The jail is operated by the Alameda County Sheriff's Office. Dkt. No. 122-2, Joe Decl. ¶ 3. The Sheriff's Office does not directly provide medical care to detainees, rather, the Sheriff's Office contracted with WellPath Healthcare Providers to provide all medical care at the jail. *Id*. ¶¶ 4-5. The Sheriff's Office assisted WellPath in providing medical care but did not direct or otherwise influence the medical care provided by WellPath. *Id*. ¶ 6.

---

[2] The Court only reviews claims that were part of the operative complaint. New claims raised for the first time in plaintiff's motion for summary judgment or oppositions will not be addressed.

2

On July 27, 2023, plaintiff received an intake and medical evaluation. Dkt. No. 121-8, Ex. A at 5, 9.[3] His main complaint was of sciatic pain. *Id*. at 501. Plaintiff's intake form reflected that that he stated he was taking the following medications: Losartan, Amlodipine, and Hydrochlorothiazide. *Id*. at 5. Plaintiff also stated that he was prescribed Gabapentin. Dkt. No. 7 at 4. To address plaintiff's complaint of sciatic pain, he was provided Tylenol and a muscle rub ointment on July 27, 2023. *Id*. at 501.

Plaintiff's medical records from Highland Hospital reflected that he had been prescribed Amlodipine, Glipizide, Loratadine, Atorvastatin, Losartan, and Pioglitazone. *Id*. at 502. A form that plaintiff was provided at his discharge from Highland Hospital on July 26, 2023, provided a list of medications he should take and the dosage. Dkt. No. 147-1 at 8. The list included Gabapentin. *Id*.

On July 30, 2023, at plaintiff's request, medical staff reviewed his medications. Dkt. No. 121-8, Ex. A at 501-02. On August 2, 2023, plaintiff was seen by medical staff for reports of leg pain, and he stated he was receiving all of his medication except for Gabapentin to treat the pain. *Id*. at 502.

On August 7, 2023, plaintiff submitted a grievance to jail staff requesting a medical appointment. Dkt. No. 122-2, Joe Decl. ¶ 7, Ex. A. On August 9, 2023, the California Superior Court requested documentation of plaintiff's treatment for sciatica. Dkt. No. 121-8, Ex. A at 502. Plaintiff was seen by medical staff on August 9, 2023. *Id*. Plaintiff's prescription history from CVS Pharmacy for the period between February 2, 2023, to August 2, 2023, was obtained and did not reflect any prescription for Gabapentin. *Id*. at 503. A referral was ordered for plaintiff to be evaluated for Gabapentin. *Id*. at 502-03.

On August 10, 2023, plaintiff was prescribed Cymbalta[4] for the sciatic pain. *Id*. at 57-58. Plaintiff was also approved for part-time wheelchair use. Dkt. No. 122-2, Joe Decl. ¶ 8, Ex. B. Plaintiff was scheduled for a medical appointment on August 16, 2023, but refused to attend. *Id*.

---

[3] The Court refers to the Bates-stamped page numbers for this exhibit.

[4] In the filings, the parties reference Cymbalta and Duloxetine, which are the same medication. Dkt. No. 121-1 at 4. Cymbalta is the brand name for Duloxetine. *Id*.

3

On August 18, 2023, plaintiff submitted a grievance to jail staff requesting different medication. *Id*. ¶ 9, Ex. C. Jail staff presented this grievance to medical personnel who responded that plaintiff was receiving all his medications that were listed on his pharmacy records, and he was receiving Cymbalta which was an equivalent to Gabapentin. *Id*. ¶ 10, Ex. D.

On September 2, 2023, medical staff treated plaintiff for complaints of sciatic pain, and he requested Gabapentin to replace the Cymbalta. Dkt. No. 121-8, Ex. A at 505. On September 12, 2023, plaintiff submitted a grievance to jail staff stating that he wanted to see a doctor and that medical staff were only providing Cymbalta instead of Gabapentin. Dkt. No. 122-2, Joe Decl. ¶ 11, Ex. E. Jail staff determined that this grievance was duplicative of his August 18, 2023, grievance which sought the same relief. *Id*. ¶ 12, Ex. F . Plaintiff was again informed that he was receiving all his medications listed on his pharmacy records and that Cymbalta was equivalent to Gabapentin. *Id*. Plaintiff was informed that Gabapentin was not part of the formulary for the jail. Dkt. No. 36 at 11.

Plaintiff was seen again on September 25, 2023, where medical staff again confirmed that there was no Gabapentin prescription from plaintiff's pharmacy. Dkt. No. 121-8, Ex. A at 506. The Cymbalta dosage was increased. *Id*. at 75.

On October 28, 2023, plaintiff was seen by medical staff and stated that his medication was not working and that he had been taking 400mg of Gabapentin prior to his incarceration. *Id*. at 506. Medical staff reviewed his records but found no prescription for Gabapentin. *Id*.

On November 27, 2023, plaintiff submitted a grievance to jail staff, stating that medical staff were not providing appropriate pain medication or diagnostic imaging. Dkt. No. 122-2, Joe Decl. ¶ 15, Ex. I. Medical staff responded that Gabapentin was not prescribed to plaintiff prior to his detention, he was having regular medical appointments, and that his care was consistent with medical guidelines. *Id*. ¶ 16, Ex. J. Plaintiff was then seen by medical staff on December 5, 2023, and his Cymbalta prescription was increased to treat his sciatic pain, and he was encouraged to gradually increase tolerance to walking and standing per his physical therapy orders. Dkt. No. 121-8, Ex. A at 509.

4

1          On December 23, 2023, plaintiff submitted a grievance to jail staff stating that he requested
2  a list of his medications, dosage and side effects, but had not been provided the information. Dkt.
3  No. 122-2, Joe Decl. ¶ 17, Ex. K.  On December 29, 2023, plaintiff was seen by medical staff and
4  requested the list of his current pain medications and the side effects  *Id*. ¶ 18, Ex. L.  At the
5  appointment, plaintiff also stated, "I was taking Gabapentin on the street, I just wanna know what
6  other medications I am on."  Dkt. No. 121-8, Ex. A at 510.  Plaintiff does not address this issue or
7  refute if he made the statement.
8          Plaintiff filed this civil rights case on January 23, 2024.  Dkt. No. 1.  From January 2024 to
9  April 2024, plaintiff continued to report back pain, but that the Cymbalta was helping.  Dkt. No.
10 121-8, Ex. A at 511, 514, 515.
11         Plaintiff was eventually prescribed Gabapentin on April 13, 2024, but continued to report
12 back pain.  *Id*. at 109, 515-16.  Plaintiff received a spinal X-ray on April 15, 2024, that showed a
13 loss of disc space with degenerative endplate changes and joint hypertrophy but no acute
14 compression fracture, osseous lesions, or spondylolisthesis.  Dkt. No. 36 at 28.  The doctor
15 concluded that there was no acute fracture or dislocation and suggested a follow up CT scan or
16 MRI if symptoms persist.  *Id*.
17         **Legal Mail**
18         On November 29, 2023, plaintiff provided legal mail, this federal civil rights complaint, to
19 Deputy Lopez for mailing.  Dkt. No. 7 at 6.  On January 6, 2024, Deputy Ujdur returned to
20 plaintiff the envelope with this complaint, because it had not been successfully mailed.  *Id*.  There
21 was a note on the envelope stating that more postage was needed.  *Id*.  Plaintiff provided
22 additional postage and the envelope was mailed.  Dkt. No. 122-2, Evans Decl. ¶ 4.  The Court
23 received the complaint on January 23, 2024, and opened this case.  Dkt. No. 1.
24         **LEGAL STANDARDS**
25         Summary judgment is proper where the pleadings, discovery, and affidavits show there is
26 "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
27 law."  *See* Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case.
28 *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is

genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id*.

The Court may grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id*. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id*. at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the Court will view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the Court will assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

**Medical Care**

A claim for a violation of a pretrial detainee's right to adequate medical care arises under the Fourteenth Amendment rather than the Eighth Amendment. *See Gordon v. County of Orange*, 888 F.3d 1118, 1122 & n.4 (9th Cir. 2018). The claim is evaluated under an objective deliberate indifference standard.

> [T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the

> circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id*. at 1125.  With regard to the third element, the defendant's conduct must be objectively unreasonable – "a test that will necessarily turn[] on the facts and circumstances of each particular care." *Id*.  The mere lack of due care by a state official is not enough.  *See Alexander v. Nguyen*, 78F.4th 1140, 1144-46 (9th Cir. 2023) (psychiatrist's failure to move detainee to different unit following attack from other detainee did not violate Fourteenth Amendment because psychiatrist acted reasonably by considering relevant factors and the treatment exceeded accepted professional standards).  The four-part test articulated in *Gordon* requires the plaintiff to prove more than negligence, but less than subjective intent – something akin to reckless disregard.  *Gordon*, 888 F.3d at 1125.

**Medical Defendants**

The Medical Defendants contend that plaintiff failed to show that the treatment provided was objectively unreasonable in violation of the Fourteenth Amendment and that plaintiff was routinely seen by medical staff and received adequate care.  Plaintiff's opposition and his motion for summary judgment argue that his rights were violated.  However, plaintiff presents only a few specific arguments and generally disagrees with the decisions made by doctors in treating his pain and in the medications they provided.  He also focusses on several claims that are not part of this action.

A review of the undisputed facts demonstrates that there was no constitutional violation with respect to plaintiff's medical care.  The record establishes that plaintiff was regularly seen by medical staff, who were responsive to his complaints of sciatic pain.  Plaintiff was initially prescribed Tylenol and a muscle rub to address the pain.  When that was not effective, he was prescribed Cymbalta, and the dosage was increased to address plaintiff's complaints, and he was instructed to engage in the physical therapy that was provided.

It is undisputed that after many months, plaintiff stated that while he was still in pain, the Cymbalta was helping.  It is also undisputed that plaintiff was eventually prescribed Gabapentin but continued to report that he was in pain.  Plaintiff received a spinal x-ray on April 15, 2024,

that showed a loss of disc space with degenerative endplate changes and joint hypertrophy but no acute compression fracture, osseous lesions, or spondylolisthesis. The doctor concluded that there was no acute fracture or dislocation and suggested a follow up CT scan or MRI if symptoms persist.

Plaintiff does not dispute these factual allegations. Rather, he says that his pain was not treated in the way he preferred, namely with Gabapentin. Whether plaintiff had been prescribed Gabapentin before custody is disputed and unclear. Plaintiff's pharmacy records indicate that he was not prescribed Gabapentin for the six months preceding detention. Although discharge records from Highland Hospital list Gabapentin as a drug plaintiff was taking, he acknowledged that this was "on the street," and not a prescription by a healthcare provider. *See* Dkt. No. 121-8, Ex. A at 510. Plaintiff does not deny that he made this statement, nor does he address if he was illegally obtaining the drug.

Overall, plaintiff has not shown that his course of treatment was objectively unreasonable or put him at risk of suffering serious harm. The Medical Defendants acted reasonably by considering the circumstances and prescribing Cymbalta and regularly treating plaintiff.

The Medical Defendants filed a declaration by an expert witness who reviewed plaintiff's medical history and stated that Cymbalta is commonly used to treat neuropathic and chronic pain. Dkt. No. 121-2, Traina Decl. ¶¶ 5-6. The expert stated that the use of Cymbalta rather than Gabapentin to treat plaintiff fully complied with the generally accepted standard of care and there was no indication in the medical records that plaintiff needed to be prescribed Gabapentin earlier than it was provided. *Id*. ¶¶ 6, 11, 14. The expert also noted that it is well-established in the medical community that Gabapentin is commonly associated with overdose deaths and is known to be abused and trafficked in correctional settings. *Id*. ¶¶ 8-9. Plaintiff disagrees with this expert opinion but does not provide sufficient allegations or evidence to counter it.

Consequently, the record does not establish that the Medical Defendants were objectively unreasonable with respect to plaintiff's treatment. Plaintiff may have had his own notions of care, but that does not gainsay the adequacy of the care he received. Even if the care amounted to malpractice, which the record here does not at all suggest, plaintiff still cannot establish a

8

constitutional violation. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") Nor does a difference in medical opinion support a Fourteenth Amendment violation. *Lozano v. County of Santa Clara*, 2019 WL 6841215, at *13 (N.D. Cal. Dec. 16, 2019) (no constitutional violation due to difference in medical opinion where doctor provided Tylenol, when other doctors prescribed an opioid pain reliever), *aff'd*, 2021 WL 4077000, at *2 (9th Cir. Sep. 8, 2021) (unpublished).

Although plaintiff did not get an x-ray until nine months after his arrival at the jail, the x-ray did not show any medical treatment that should have been provided earlier. He is not entitled to relief for this claim that the x-ray was delayed. Plaintiff also alleges that he was not provided his medications and was not seen by medical personnel for the first thirteen days of his detention. This assertion is refuted by the record. Plaintiff arrived at the jail on July 26, 2023. It is undisputed that he was seen by medical staff on July 27, July 30, and August 2, 2023, and was initially provided pain medication, just not Gabapentin. He also stated to medical staff at this time, that he was provided all his other medications. This claim is denied.

**County Defendants**

It is undisputed that the County Defendants were not directly involved in plaintiff's medical care. It is also undisputed that when plaintiff submitted grievances regarding his medical care to jail employees, the grievances were promptly referred to medical staff. Plaintiff presents no specific allegations against the individual County Defendants regarding his medical care. These defendants are entitled to summary judgment because they were not involved in plaintiff's medical care and even if they were, the Court has already found that plaintiff received appropriate care and there was no constitutional violation.

To the extent the complaint presents a *Monell* claim, the County Defendants are entitled to summary judgment. To prevail on a *Monell* claim, a plaintiff must show: "(1) that he possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation." *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). Generally, "a single incident of unconstitutional

9

1 activity is not sufficient to impose liability under *Monell*." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). If a plaintiff does not have an argument that the "policies themselves were unconstitutional," the plaintiff must "produce evidence creating a triable issue of fact regarding the existence of an unconstitutional practice or custom." *Gordon v. Orange County*, 6 F.4th 961, 974 (9th Cir. 2021) (no custom or practice was shown where the record lacks evidence of any other event involving similar conduct or constitutional violations).

Even assuming there was a constitutional violation regarding plaintiff's medical care, the undisputed evidence demonstrates that there was no policy to deny certain prescriptions or medical care to detainees. Plaintiff presents a few general allegations that the defendants had a policy to deny Gabapentin and other medical care. Yet, he provides no support, and no specific allegations that others were affected. His vague statements are insufficient.

Defendants are also entitled to summary judgment for plaintiff's claim under the Americans with Disabilities Act, to the extent any such claim was presented. Title II of the Americans with Disabilities Act of 1990, 42 U.S.C.§ 12101 et seq., provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Plaintiff generally argued in the amended complaint that he was denied medical appliances and reasonable accommodations. It is undisputed that plaintiff was provided a wheelchair for part-time use within two weeks of arrival at the jail. Plaintiff does not address how the wheelchair was insufficient or if he was denied access to any programs or services at the jail. Plaintiff's general allegations from the complaint are insufficient to counter the evidence in defendants' summary judgment motion.

To the extent, plaintiff presented a claim that his medical care violated the Equal Protection Clause, the County Defendants are entitled to summary judgment. Plaintiff generally argued that other detainees received pain medication. The County Defendants presented evidence demonstrating the absence of a genuine issue of material fact and plaintiff has not meaningfully challenged their arguments. The County Defendants noted that plaintiff did receive pain

medication, just not the medication of his choosing, and he did not provide any specific allegations to support his claim that others did receive their preferred pain medication, if that was indeed his claim. It is insufficient to state that others were treated differently without providing supporting information. Summary judgment is granted for this claim.

**Legal Mail**

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To establish a claim for any violation of the right of access to the courts, the prisoner must prove that there was an inadequacy in the prison's legal access program that caused him an actual injury. *See Lewis*, 518 U.S. at 349-51. To prove an actual injury, the prisoner must show that the inadequacy in the prison's program hindered his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement. *See id*. at 351, 354-55.

The deliberate delay of legal mail which adversely affects legal proceedings presents a cognizable claim for denial of access to the courts. *See Jackson v. Procunier*, 789 F.2d 307, 311 (5th Cir. 1986). Isolated incidents of mail interference without any evidence of improper motive or resulting interference with the right to counsel or access to the courts do not give rise to a constitutional violation, however. *See Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990).

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id*. at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Court may exercise its

1  discretion in deciding which prong to address first, in light of the particular circumstances of each
2  case. *Id*.

3        It is undisputed that plaintiff provided this federal civil rights complaint to defendant
4  Lopez for mailing on November 29, 2023, and it was returned to plaintiff on January 6, 2024, by
5  defendant Ujdur with a note stating more postage was required. Plaintiff provided additional
6  postage, and the complaint was mailed to the Court and the case was opened. Plaintiff argues that
7  the defendant deputies purposefully held the complaint for several weeks and defendants argue
8  that the mail was returned for insufficient postage and that they are entitled to qualified immunity.

9        Even if these defendants were responsible for a purposeful delay in mailing the complaint,
10  they are entitled to qualified immunity. Plaintiff's claim involves an isolated incident of a delay in
11  his mail being sent and he suffered no legal injury from the delay. The Court eventually received
12  the complaint approximately 38 days later and the case was opened. No claims or defendants
13  were dismissed due to the timing of the filing.

14        Plaintiff argues that after receiving the complaint, the Court ordered defendants to respond
15  to the allegations in plaintiff's motion for injunctive relief which led to defendants providing
16  Gabapentin and referring plaintiff for an X-ray. He contends that his legal injury was from this
17  delay in providing the medical care. However, the Court received the complaint on January 23,
18  2024, and the case was assigned to a magistrate judge. Plaintiff did not file his motion for
19  injunctive relief until March 15, 2024, which resulted in the case being reassigned, and the Court
20  ordering defendants to respond to the motion.

21        Even if the delay in processing plaintiff's legal mail led to a delay in providing the
22  medication and X-ray, it was plaintiff's nearly two month wait in filing the motion for injunctive
23  relief that was the greater time period. Furthermore, plaintiff received regular medical care and
24  pain medication during this time, the Gabapentin did not fully address the pain when prescribed,
25  and the X-ray did not show any medical care that should have been provided earlier.

26        Plaintiff has not shown the deprivation of an actual constitutional right. Pursuant to the
27  legal standards above, this isolated incident of a delay in sending legal mail, with no legal injury,
28  fails to state a constitutional violation. *See Cardenas v. Lewis*, 66 F. Appx 86, 90 (9th Cir. 2003)

(unpublished) (officer entitled to qualified immunity for opening legal mail outside of presence of prisoner and delaying delivery).

Plaintiff also filed a third motion to compel regarding this claim. Dkt. No. 148. This motion seeks the County Defendants involved in the legal mail claim to respond to his second set of interrogatories. The previous two motion to compel (Dkt. Nos. 67, 77) were denied without prejudice. In one instance, plaintiff's discovery requests were confusing and required clarification. On the other occasion, the motion to compel was cursory and simply asked the Court to compel the County Defendants to respond to the discovery requests without describing the discovery requests, the reasons why the responses were inadequate, and why the Court should compel a response. Plaintiff was advised to address these issues in any amended motion.

The instant amended motion to compel has not cured the deficiencies of the prior motion and again requests the Court to compel responses without providing any other information. Dkt. No. 148 at 1-2. The motion is denied for the same reasons as the prior motion. Assuming plaintiff had provided reasons in support of the motion, it would still be denied. Even if the County Defendants purposely delayed the legal mail on one isolated occasion, with no legal injury, they are entitled to qualified immunity. No additional discovery would affect the outcome.

**CONCLUSION**

1. The Medical Defendants' motion for summary judgment (Dkt. No. 121) and the County Defendants' motion for summary judgment (Dkt. No. 122) are granted. Plaintiff's motion for summary judgment (Dkt. No. 116) is denied.

2. Plaintiff's motion to compel (Dkt. No. 148) is denied.

3. The Clerk is requested to terminate all pending motions, enter judgment, and close the file.

**IT IS SO ORDERED.**

Dated: January 5, 2026

JAMES DONATO
United States District Judge

13